# EXHIBIT A

**THE PARK LAW GROUP, LLC**
Attorneys for Plaintiff The Dong-A Ilbo
Chull S. Park, Esq. (No. 202681)
Hyun Suk Choi, Esq. (No. 203535)
23 S. Warren Street
2nd Floor
Trenton, New Jersey 08608

### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **THE DONG-A ILBO,**<br>Dong-A Media Center<br>139 Sejong Ro, Jongno Gu,<br>Seoul, 110-715, South Korea<br><br>Plaintiff,<br><br>v.<br><br>**BO H. LIM a/k/a BO HYUN LIM a/k/a DAVID LIM a/k/a LIM BO a/k/a BO LIM a/k/a BO HI LIM a/k/a BO HYEON LIM,**<br>611 River Road<br>Yardley, Pennsylvania 19067-1906,<br><br>AND<br><br>**KOOK JIN LEE a/k/a KUK JIN LEE a/k/a KOOK J. LEE a/k/a KOOKJIN LEE a/k/a KOO J. LEE a/k/a KOK J. LEE a/k/a KOOK LEE a/k/a KOOK JUN LEE a/k/a PETER LEE,**<br>5330 Twillingate Place<br>Duluth, Georgia 30097-6436,<br><br>AND<br><br>**THE KOREAN DAILY TRIBUNE, INC. a/k/a KOREAN DAILY TRIBUNE, INC. a/k/a DONG-A DAILY NEWS, PHILADELPHIA, INC. a/k/a DONG-A DAILY NEWS d/b/a THE CHOSUN DAILY PHILADELPHIA d/b/a THE DONG-A DAILY NEWS d/b/a DONG-A** | Civil Action No. 08-2399 (GP)<br><br><br>**<ins>FIRST AMENDED VERIFIED COMPLAINT</ins>**<br><br>**<ins>ECF CASE</ins>** |

13448_5

Case 09-27116    Doc 40-3    Filed 11/16/09    Page 3 of 54

**DAILY NEWS, INC.,**
1330 Willow Avenue
Elkins Park, Pennsylvania 19027,

AND

**THE KOREAN SOUTHEAST NEWS, INC. a/k/a KOREA SOUTHEAST NEWS a/k/a THE SOUTHEAST NEWS, INC. d/b/a DONGA DAILY NEWS, LLC d/b/a THE CHOSUN DAILY NEWS-ATLANTA,**
2730 N. Berkeley Lake Road, #800
Duluth, Georgia 30096,
with a branch office located at
1330 Willow Avenue
Elkins Park, Pennsylvania 19027

AND

**STV NETWORKS, INC., jointly and severally,**
1330 Willow Avenue
Elkins Park, Pennsylvania 19027

Defendants.

Plaintiff The Dong-A Ilbo ("Plaintiff") by and through its undersigned counsel, alleges on information and belief as follows:

## JURISDICTION AND VENUE

1.      This Court has original subject matter jurisdiction of Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and 1338(a) and (b) because Plaintiff seeks redress for violations of the Lanham (Trademark) Act, as amended, 15 U.S.C. §§ 1051, et seq., and the Copyright Act of 1976, as amended, 17 U.S.C. §§ 101 et seq. (the "Copyright Act").

2.      This Court also has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 because the citizenship of the parties is diverse, and the

amount in controversy exceeds $75,000.00, exclusive of interest and costs.

      3.     This Court also has supplemental jurisdiction over the claims arising under state law pursuant to 28 U.S.C. § 1367(a) because such claims are so related to the claims in the action within the original jurisdiction that they form part of the same case and controversy.

      4.     Venue is proper in this district pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district and a substantial part of the property that is the subject of this action is situated in this district.

**PARTIES**

      5.     Plaintiff is a corporation organized and existing pursuant to the laws of South Korea with its principal place of business located at Dong-A Media Center, 139 Sejong Ro, Jongno Gu, Seoul, 110-715, South Korea.

      6.     Upon information and belief, Defendant Bo H. Lim a/k/a Bo Hyun Lim a/k/a David Lim a/k/a Lim Bo a/k/a Bo Lim a/k/a Bo Hi Lim a/k/a Bo Hyeon Lim ("Defendant Lim") resides at 611 River Road, Yardley, Pennsylvania 19067-1906.

      7.     Upon information and belief, Defendant Kook Jin Lee a/k/a Kuk Jin Lee a/k/a Kook J. Lee a/k/a Kookjin Lee a/k/a Koo J. Lee a/k/a Kok J. Lee a/k/a Kook Lee a/k/a Kook Jun Lee a/k/a Peter Lee ("Defendant Lee") resides at 5330 Twillingate Place, Duluth, Georgia 30097-6436.

      8.     Upon information and belief, Defendant The Korean Daily Tribune, Inc. a/k/a Korean Daily Tribune, Inc. a/k/a Dong-A Daily News, Philadelphia, Inc. a/k/a Dong-A Daily News d/b/a The Chosun Daily Philadelphia d/b/a The Dong-A Daily News

d/b/a Dong-A Daily News, Inc. ("Defendant KDT") is a corporation organized and existing pursuant to the laws of Commonwealth of Pennsylvania with its principal place of business located at 1330 Willow Avenue, Elkins Park, Pennsylvania 19027 and is doing business within the jurisdiction of this Court.

9. Upon information and belief and at all relevant times, Defendant Lim personally owns, operates, and controls Defendant KDT.

10. Upon information and belief, Defendant Lim is the owner of all of the equipment of Defendant KDT or personally guarantees Defendant KDT's purchase or lease of its equipments.

11. Upon information and belief and at all relevant times, Defendant KDT conducts business throughout the United States on a regular basis, transacts business in the Commonwealth of Pennsylvania, contracts and supplies goods and services in the Commonwealth of Pennsylvania, regularly solicits business in the Commonwealth of Pennsylvania, and derives substantial revenue from conducting business in the Commonwealth of Pennsylvania.

12. Upon information and belief, The Korean Southeast News, Inc. a/k/a Korea Southeast News a/k/a The Southeast News, Inc. d/b/a Donga Daily News, LLC d/b/a The Chosun Daily News-Atlanta ("Defendant KSN") is a corporation organized and existing pursuant to the laws of the State of Georgia, with its principal place of business located at 2730 N. Berkeley Lake Road, #800, Duluth, Georgia 30096 and with a branch office located at 1330 Willow Avenue, Elkins Park, Pennsylvania 19027.

13. Upon information and belief, Defendant Lee personally owns, operates, and controls Defendant KSN.

14.    Defendant Lee is personally the owner of all of the equipment of Defendant KSN or personally guarantees Defendant KSN's purchase or lease of its equipments.

15.    Upon information and belief and at all relevant times, Defendant KSN conducts business throughout the United States on a regular basis, transacts business in the Commonwealth of Pennsylvania, contracts and supplies goods and services in the Commonwealth of Pennsylvania, regularly solicits business in the Commonwealth of Pennsylvania, and derives substantial revenue from conducting business in the Commonwealth of Pennsylvania through its branch office located at 1330 Willow Avenue, Elkins Park, Pennsylvania 19027.

16.    Upon information and belief and at all relevant times, Defendant KDT and Defendant KSN have maintained a business relationship in which Defendant KDT and Defendant KSN use each other's headquarters as their branch offices and act as one entity in negotiating contracts with third parties with respect to their businesses.

17.    Upon information and belief and at all relevant times, Defendant Lim and Defendant KDT acted as agents for Defendant Lee or Defendant KSN.

18.    Upon information and belief and at all relevant times, Defendant Lee and Defendant KSN acted as agents for Defendant Lim or Defendant KDT.

19.    Upon information and belief and at all relevant times, Defendant Lim also owns and operates Dong-A Broadcasting System, Donga Media Group a/k/a Miju Donga Media Group, Dongausa.com, Donga Cultural Center, Donga Distribution, The Chosun Daily, Inc. (established in September of 1998), Asian Printing, Korean Christian Broadcasting a/k/a Philadelphia Christian Broadcasting, TJ Screening Printing, and

Christian Post (collectively, "Lim's Companies").

20.     Upon information and belief and at all relevant times, Lim's Companies are corporations organized and existing pursuant to the laws of Commonwealth of Pennsylvania, and their principal places of business are located within the Commonwealth of Pennsylvania.

21.     Upon information and belief and at all relevant times, Lim's Companies conduct business throughout the United States on a regular basis, transact business in the Commonwealth of Pennsylvania, contract and supply goods and services in the Commonwealth of Pennsylvania, regularly solicit business in the Commonwealth of Pennsylvania, and derive substantial revenue from conducting business in the Commonwealth of Pennsylvania.

22.     Upon information and belief and at all relevant times, Defendant Lee also owns and operates Korean Marketing, Inc., Atlantadonga.com a/k/a Atlantakorean.com, Korean Trade Association of Southeast USA, Inc. (collectively, "Lee's Companies"). Lee's Companies are corporations organized and existing pursuant to the laws of the State of Georgia.

23.     Upon information and belief and at all relevant times, Lee's Companies maintain its branch offices within the Commonwealth of Pennsylvania.

24.     Upon information and belief and at all relevant times, Lim's Companies conduct business throughout the United States on a regular basis, transact business in the Commonwealth of Pennsylvania, contract and supply goods and services in the Commonwealth of Pennsylvania, regularly solicit business in the Commonwealth of Pennsylvania, and derive substantial revenue from conducting business in the

Commonwealth of Pennsylvania.

25.    Upon information and belief, Defendant STV Networks, Inc. ("Defendant STV") is a corporation organized and existing pursuant to the laws of the State of Delaware with its principal place of business located at 1330 Willow Avenue, Elkins Park, Pennsylvania 19027 and is doing business within the jurisdiction of this Court.

26.    Upon information and belief and at all relevant times, Defendant Lim is a shareholder, officer, director, or employee of Defendant STV.

27.    Upon information and belief and at all relevant times, Defendant STV conducts business throughout the United States on a regular basis, transacts business in the Commonwealth of Pennsylvania, contracts and supplies goods and services in the Commonwealth of Pennsylvania, regularly solicits business in the Commonwealth of Pennsylvania, and derives substantial revenue from conducting business in the Commonwealth of Pennsylvania.

## STATEMENT OF FACTS

28.    Plaintiff repeats and realleges the allegations in the preceding paragraphs as though set forth here at length.

### I.    Plaintiff's Business

29.    Since 1920, Plaintiff has provided information and news to the public in South Korea, the United States and other foreign countries in various forms through use of various media, including but not limited to print news, newspapers, books, journals, magazines, Internet web sites, downloadable digital files and documents, photo journals, educational and cultural programs and video programming ("Plaintiff's Media").

30.    Plaintiff creates, owns, develops and distributes Plaintiff's Media

throughout South Korea, the United States and other foreign countries.

## II. Plaintiff's Trademarks

31. Since 1920, Plaintiff has published, distributed and sold Plaintiff's Media, using its trade name, moniker, associated and representative symbols or characters, "Dong-A Ilbo" and its Korean, English and Chinese characters, "The Dong-A Daily News," "Miju Dong-A Ilbo" in its English and Chinese characters, and certain logos ("Plaintiff's Trademarks") in South Korea, the United States and other foreign countries through direct channels of distribution or through the use of licenses and other agreements.

32. Plaintiff is the sole and exclusive owner of Plaintiff's Trademarks.

33. Plaintiff's Trademarks are famous throughout the world due to Plaintiff's history spanning over 80 years.

34. Over the 80 years and as a result of Plaintiff's substantial advertising and promotional efforts, Plaintiff's Trademarks are widely recognized by consumers as being associated with Plaintiff's Media and have become synonymous with the goodwill and reputation of Plaintiff to provide valuable and accurate news and information.

35. Through certain authorized licensees of Plaintiff in the United States, Plaintiff used Plaintiff's Trademarks in Plaintiff's Media within the United States.

36. Plaintiff, through its authorized licensees, identified, promoted and marketed Plaintiff's Media under Plaintiff's Trademarks to distinguish its products from those offered by other competitors.

## III. Plaintiff's Copyrighted Works

37. Plaintiff created and own all of the works contained in Plaintiff's Media,

including but not limited to articles, pictures, photographs and motion pictures and other works of creation ("Plaintiff's Copyrighted Works"), which have been published and distributed through Plaintiff's Media.

38.     Plaintiff published or distributed Plaintiff's Copyrighted Works within the United States.

39.     Plaintiff properly registered Plaintiff's Copyrighted Works pursuant to the requirements of South Korean copyright law.

## IV.     *Plaintiff's Domain Name*

40.     Plaintiff is the owner of a certain domain name or web site address, commonly known as **www.donga.com** ("Plaintiff's Domain Name"). (Emphasis added).

41.     Plaintiff's Domain Name uses a portion of Plaintiff's corporate name and Plaintiff's Trademarks in its web site address, specifically the term **"donga."** (Emphasis added).

42.     Plaintiff extensively uses Plaintiff's Trademarks, Plaintiff's Copyrighted Works and Plaintiff's Media throughout Plaintiff's website and other Internet properties identified and located by the use of Plaintiff's Domain Name.

## V.     *Agreement between Plaintiff and Defendant Lim*

43.     On or about September 24, 1994, Plaintiff and Defendant Lim entered into a certain agreement ("the License Agreement") where Plaintiff allowed Defendant Lim to publish and sell Plaintiff's Copyrighted Works in the Philadelphia, Pennsylvania area.

44.     Pursuant to the License Agreement, Plaintiff provided Plaintiff's Copyrighted Works to Defendant Lim by allowing Defendant Lim to download Plaintiff's Copyrighted Works from Plaintiff's computer server by a digital delivery

system commonly known as File Transfer Protocol ("the FTP").

45.     Plaintiff provided a certain password ("the Password") to Defendant Lim so that he would be able to download Plaintiff's Copyrighted Works by the FTP.

46.     Defendant Lim and Defendant KDT have inserted Plaintiff's Copyrighted Works in their own newspaper ("KDT's Newspaper") and have sold KDT's Newspaper to citizens or residents of the United States in the Commonwealth of Pennsylvania.

## VI.     Agreement among Plaintiff, Defendant Lee, and Defendant KSN

47.     In or about September of 2004, Defendant Lim introduced Defendant Lee and Defendant KSN to Plaintiff.

48.     Plaintiff and Defendant KSN had a meeting in or about September of 2004 ("the Meeting").

49.     During the Meeting, Defendant Lee and Defendant KSN requested Plaintiff's permission to allow them to publish and sell Plaintiff's Copyrighted Works in the Atlanta, Georgia area.

50.     In late December of 2004, Plaintiff proposed a possible agreement to Defendant Lee and Defendant KSN ("Plaintiff's Proposed Agreement") where Defendant Lee and Defendant KSN would be allowed to publish and sell Plaintiff's Copyrighted Works in the Atlanta, Georgia area.

51.     On or about January 19, 2005, Defendant Lee and Defendant KSN requested Plaintiff to modify certain terms and conditions of Plaintiff's Proposed Agreement.

52.     Plaintiff refused to accept Defendant Lee and Defendant KSN's proposed modifications to Plaintiff's Proposed Agreement.

53.     On or about March 9, 2005, while Plaintiff, Defendant Lee, and Defendant KSN were still negotiating the terms and conditions of Plaintiff's Proposed Agreement, Plaintiff learned that Defendant Lee and Defendant KSN had previously published Plaintiff's Copyrighted Works and Plaintiff's Trademarks without Plaintiff's knowledge, permission or authorization.

54.     Defendant Lee and Defendant KSN admitted they had previously published Plaintiff's Copyrighted Works in the Atlanta, Georgia area without Plaintiff's knowledge, permission or authorization.

55.     Defendant Lee and Defendant KSN also admitted they previously received the Password from Defendant Lim and used the Password to download Plaintiff's Copyrighted Works by the FTP for purposes of publishing and selling Plaintiff's Copyrighted Works in the Atlanta, Georgia area.

56.     Since Defendant Lee and Defendant KSN desired to continue its business in Atlanta, Georgia, in or around mid-March of year 2005, Defendant Lee and Defendant KSN requested Plaintiff to temporarily allow them to publish and distribute Plaintiff's Copyrighted Works in the Atlanta, Georgia area.

57.     On or about March 29, 2005, upon Defendant Lee and Defendant KSN's assurances that their previous acts of bad faith concerning the unauthorized use of Plaintiff's Copyrighted Works would not occur again, Plaintiff agreed to allow Defendant Lee and Defendant KSN to publish and distribute Plaintiff's Copyrighted Works in the Atlanta, Georgia area on a temporary and trial basis.     ("the Temporary Trial Publication").

58.     Plaintiff provided the Password to Defendant Lee and Defendant KSN so

that they would be able to download Plaintiff's Copyrighted Works by the FTP.

59. Upon information and belief and pursuant to the Temporary Trial Publication, Defendant Lee and Defendant KSN inserted Plaintiff's Copyrighted Works in their own newspaper ("KSN's Newspaper") and sold KSN's Newspaper to citizens and residents of the United States in the State of Georgia.

## VII. *Defendant Lim's Attempt to Modify the License Agreement*

60. On or about February 18, 2005, Defendant Lim attempted to unilaterally modify the License Agreement by demanding Plaintiff to agree to certain modifications to the License Agreement.

61. Defendant Lim forwarded a certain agreement that, as acknowledged by Defendant Lim, was an identical version of Plaintiff's Proposed Agreement, the agreement used by Defendant Lee and Defendant KSN, except for a change to the parties and the deletion of the security deposit requirement.

62. Defendant Lim's apparent goal was to drastically and unilaterally reduce the amount of the monthly payment for Plaintiff's Copyrighted Works from $2,000.00 to $500.00.

63. Plaintiff refused to agree to Lim's such demand to modify the License Agreement.

64. Despite Plaintiff's clear refusal, Defendant Lim started forwarding checks to Plaintiff in the amount of $500.00 ("Lim's Checks") from February 2005 to January 10, 2006.

65. Plaintiff refused to accept Lim's Checks and never cashed, deposited or credited any of Lim's Checks since such payments did not comport with the terms of the

License Agreement.

## VIII.   Defendant Lim's Breaches of the License Agreement and Defendant Lee and Defendant KSN's Unauthorized Sale of Plaintiff's Copyrighted Works.

### (a)    Defendant Lim's Breaches of the License Agreement

66.     Pursuant to the License Agreement, Defendant Lim was required to pay the sum of $2,000.00 to Plaintiff per each month during the term of the License Agreement.

67.     Pursuant to the License Agreement, Defendant Lim was required to pay the sum of $6,000.00 to Plaintiff upon execution of the License Agreement.

68.     During the term of the License Agreement, Defendant Lim failed to perform his payment obligations pursuant to the License Agreement and has refused to make the required payments to Plaintiff under the License Agreement to date.

69.     Pursuant to the License Agreement, Defendant Lim was allowed to publish and sell Plaintiff's Copyrighted Works only within the Philadelphia, Pennsylvania area.

70.     During the term of the License Agreement, Defendant Lim breached the License Agreement by publishing and selling Plaintiff's Copyrighted Works outside of the Philadelphia, Pennsylvania area.

71.     Pursuant to the License Agreement, Defendant Lim was prohibited from providing Plaintiff's Copyrighted Works to a third party.

72.     During the term of the License Agreement, Defendant Lim breached the License Agreement by providing Plaintiff's Copyrighted Works to Defendant Lee and Defendant KSN.

73.     Defendant Lim also breached other material terms and conditions of the

License Agreement.

### (b) Defendant Lee and Defendant KSN's Unauthorized Sale of the Plaintiff's Copyrighted Works

74. Defendant Lee and Defendant KSN agreed to make certain payments to Plaintiff for the Temporary Trial Publication, but failed to make full payment for the Temporary Trial Publication.

75. Pursuant to the Temporary Trial Publication, Defendant Lee and Defendant KSN were allowed to publish and sell Plaintiff's Copyrighted Works only within the Atlanta, Georgia area.

76. During the period of the Temporary Trial Publication, Defendant Lee and Defendant KSN published and sold Plaintiff's Copyrighted Works outside of the Atlanta, Georgia area.

### IX. Defendant Lim, Defendant Lee, and Defendant KSN's Bad Faith Misrepresentation and Plaintiff's Reliance During the Term of the License Agreement and the Temporary Trial Publication

77. Despite Defendant Lim's failure to make required payments under the License Agreement, Plaintiff provided Plaintiff's Copyrighted Works to Defendant Lim, relying on Defendant Lim's continuous assurances and representations to Plaintiff that Defendant Lim would make prompt payment to Plaintiff once the financial situation of Defendant Lim's business improved.

78. Further, Defendant Lim continuously attempted to convince Plaintiff that Plaintiff should allow him to publish and sell Plaintiff's Copyrighted Works to the citizens or residents of the United States in the Philadelphia, Pennsylvania area.

79. Despite Defendant Lee and Defendant KSN's previous use of Plaintiff's

14

Copyrighted Works without Plaintiff's knowledge, permission and authorization, Plaintiff provided Plaintiff's Copyrighted Works to Defendant Lee and Defendant KSN, relying on Defendant Lee and Defendant KSN's continuous assurances and representations to Plaintiff that their previous acts of bad faith concerning the unauthorized use of Plaintiff's Copyrighted Works would not occur again.

80.     Further, Defendant Lee and Defendant KSN continuously attempted to convince Plaintiff that Plaintiff should allow them to publish and sell Plaintiff's Copyrighted Works to the citizens or residents of the United States in the Atlanta, Georgia area.

## X.     *Defendant Lim, Defendant KDT, Defendant Lee, Defendant KSN's Unauthorized Use of Plaintiff's Trademarks*

### (a)     *Defendant Lim and Defendant KDT's Unauthorized Use of Plaintiff's Trademarks*

81.     As acknowledged by Defendant Lim, Defendant Lim and Defendant KDT were never authorized to use Plaintiff's Trademarks.

82.     Without Plaintiff's authorization, Defendant Lim used a portion or the entire portion of Plaintiff's Trademarks, specifically, **"Dong-A," "Donga," "Dong-A Daily News,"** or **"Miju Donga"** with regard to his businesses, including but not limited to **Dong-A Daily News**, Philadelphia, Inc. a/k/a **Dong-A Daily News** d/b/a The **Dong-A Daily News** d/b/a **Dong-A Daily News**, Inc., **Dong-A** Broadcasting System, **Donga** Media Group a/k/a **Miju Donga** Media Group, **Donga** Cultural Center, and **Donga** Distribution, all of which are owned, managed, and operated by Defendant Lim. (Emphasis added).

83.     Without Plaintiff's authorization, Defendant Lim and Defendant KDT also

used Plaintiff's Trademarks on the first page of KDT's Newspaper, namely the masthead of KDT's Newspaper.

84.     The masthead of KDT's Newspaper was almost identical to the masthead used by Plaintiff.

85.     Without Plaintiff's authorization, Defendant Lim and Defendant KDT also used a portion of Plaintiff's Trademarks when they registered their domain name, namely, www.**donga**usa.com ("KDT's Website"). (Emphasis added).

86.     Without Plaintiff's authorization, Defendant Lim and Defendant KDT used Plaintiff's Trademarks in KDT's Website.

87.     Through the unauthorized use of Plaintiff's Trademarks and Plaintiff's Copyrighted Works, Defendant Lim and Defendant KDT confused and misled the public to believe that Plaintiff and Defendant KDT are related entities, thereby capitalizing on the goodwill and reputation of Plaintiff.

88.     Upon information and belief and at all relevant times, Defendant Lim used Lim's Companies to provide to Defendant KDT the means to produce, advertise, and distribute Defendant KDT's products, which contained Plaintiff's Trademarks, through his personal connection to and control over Lim's Companies.

89.     On or about December 21, 2004, certain individuals ("the Individuals") sued Defendant Lim, Defendant KDT and Plaintiff in the Commonwealth of Pennsylvania, Montgomery County regarding the Individuals' defamation claims ("the Defamation Action").

90.     In the Defamation Action, the Individuals alleged that Defendant Lim and Defendant KDT published certain news articles in KDT's Newspaper, which contained

defamatory statements concerning the Individuals.

91.    The allegedly defamatory articles in KDT's Newspaper were solely prepared and published by Defendant Lim and Defendant KDT.

92.    In the Defamation Action, the Individuals also sued Plaintiff, alleging that Plaintiff and Defendant KDT are "legally-related" companies.

### (b)    Defendant Lee and Defendant KSN's Unauthorized Use of Plaintiff's Trademarks

93.    Defendant Lee and Defendant KSN were never authorized to use Plaintiff's Trademarks.

94.    Without Plaintiff's knowledge, permission or authorization, Defendant Lee used Plaintiff's Trademarks, specifically, **"Donga Daily News,"** in the company name of his businesses, including but not limited to **Donga** Daily News, LLC, which is owned, managed, and operated by Defendant Lee. (Emphasis added).

95.    Without Plaintiff's knowledge, permission or authorization, Defendant Lee and Defendant KSN also used Plaintiff's Trademarks on the first page of KSN's Newspaper, namely the masthead of KSN's Newspaper.

96.    The masthead of KSN's Newspaper was almost identical to the masthead used by Plaintiff.

97.    Without Plaintiff's knowledge, permission or authorization, Defendant Lee and Defendant KSN also used Plaintiff's Trademarks when they registered the domain name for Defendant KSN and Defendant Lee, specifically, www.atlanta**donga**.com ("KSN's Domain Name"). (Emphasis added).

98.    Without Plaintiff's knowledge, permission or authorization, Defendant Lee and Defendant KSN used Plaintiff's Trademarks in KSN's website and Internet

properties identified and located by the use of KSN's Domain Name.

99.     Upon information and belief and at all relevant times, Defendant Lee used Lee's Companies to provide Defendant KSN with the means to produce, advertise, and distribute Defendant KSN's products, which contained Plaintiff's Trademarks, through his personal connection to and control over Lee's Companies.

100.    Through the unauthorized use of Plaintiff's Trademarks and Plaintiff's Copyrighted Works, Defendant Lee and Defendant KSN confused and misled the public to believe that Plaintiff and Defendant KSN are related entities, thereby capitalizing on the goodwill and reputation of Plaintiff.

101.    In or around November 2006, an individual residing in Atlanta, Georgia contacted Plaintiff and threatened to sue Plaintiff because of Defendant KSN's alleged defamatory articles, which were published in KSN's Newspaper.

### (c)     *Defendant Lim's Contribution to Defendant Lee and Defendant KSN's Unauthorized Use of Plaintiff's Trademarks*

102.    Upon information and belief and at all relevant times, Defendant Lim, Defendant Lee, and Defendant KSN have maintained a business relationship, and Defendant Lee and Defendant KSN acted as agents for Defendant Lim.

103.    Prior to the Temporary Trial Publication, Defendant Lim provided the Password to Defendant Lee and Defendant KSN without Plaintiff's knowledge, permission, or authorization, thereby inducing or materially contributing to Defendant Lee and Defendant KSN's infringing conduct.

### XI.    *Termination Notices*

104.    On or about February 12, 2007, Plaintiff terminated the License Agreement because of Defendant Lim's continued material breaches of the License

Agreement ("Termination Notice I").

105.    In Termination Notice I, Plaintiff demanded Defendant Lim's immediate payment to Plaintiff concerning his outstanding balance under the License Agreement.

106.    In Termination Notice I, Plaintiff demanded Defendant Lim and Defendant KDT immediately cease using Plaintiff's Trademarks and Plaintiff's Copyrighted Works.

107.    On or about February 12, 2007, Plaintiff terminated the Temporary Trial Publication ("Termination Notice II").

108.    In Termination Notice II, Plaintiff demanded Defendant Lee and Defendant KSN immediately cease using Plaintiff's Trademarks and Plaintiff's Copyrighted Works.

## XII.    Defendant Lim, Defendant KDT, Defendant Lee, and Defendant KSN's Bad Faith Misrepresentation to Plaintiff and the Public

### (a)    Defendant Lim, Defendant KDT, Defendant Lee, and Defendant KSN's Bad Faith Misrepresentation to Plaintiff

109.    Even after Termination Notice I and Termination Notice II (collectively, "Termination Notices"), Defendant Lim, Defendant KDT, Defendant Lee, and Defendant KSN have published and have sold Plaintiff's Copyrighted Works despite Plaintiff's demand that Defendant Lim, Defendant KDT, Defendant Lee, and Defendant KSN immediately cease such infringing activities.

110.    In response to Termination Notices, Defendant Lim, Defendant KDT, Defendant Lee, and Defendant KSN continuously represented to Plaintiff that they wanted to amicably resolve all disputes with Plaintiff and also requested Plaintiff to allow them to continue to publish and sell Plaintiff's Newspapers.

111.     In response to Termination Notices, Defendant Lim, Defendant KDT, Defendant Lee, and Defendant KSN also requested Plaintiff to enter into new license agreements with Defendant Lim, Defendant KDT, Defendant Lee, and Defendant KSN on numerous occasions.

112.     In response to Termination Notice I, Defendant Lim and Defendant KDT also threatened Plaintiff by stating that if Plaintiff does not allow Defendant Lim to publish Plaintiff's Copyrighted Works, it would be a great loss to the citizens and residents of the United States in the Commonwealth of Pennsylvania.

113.     In response to Termination Notice I, Defendant Lim and Defendant KDT also threatened Plaintiff by stating that if Plaintiff does not allow Defendant KDT to publish Plaintiff's Copyrighted Works, it would be impossible for Defendant Lim and Defendant KDT to resolve the Defamation Action with the Individuals.

114.     On or about July 6, 2007, Plaintiff again demanded Defendant Lim, Defendant KDT, Defendant Lee, and Defendant KSN to immediately stop using Plaintiff's Trademarks and Plaintiff's Copyrighted Works.

115.     In or around July and August of 2007, Defendant Lim, Defendant KDT, Defendant Lee, and Defendant KSN repeatedly represented to Plaintiff that Defendant Lim, Defendant KDT, Defendant Lee, and Defendant KSN sincerely wanted to amicably resolve the disputes and to enter into a new license agreement with Plaintiff.

*(b)*     ***Defendant Lim, Defendant KDT, Defendant Lee, and Defendant KSN's Entering into Contracts with Plaintiff's Competitor without Plaintiff's Knowledge***

116.     Upon information and belief, while repeatedly making numerous misrepresentations to attempt to induce Plaintiff into foregoing litigation against

Defendant Lim, Defendant KDT, Defendant Lee, and Defendant KSN, including but not limited to the repeated misrepresentation that Defendant Lim, Defendant KDT, Defendant Lee, and Defendant KSN wanted to enter into a new agreement with Plaintiff, Defendant Lim, Defendant KDT, Defendant Lee, and Defendant KSN were negotiating a separate agreement with Plaintiff's competitor, The Chosun Ilbo, located in South Korea. ("Plaintiff's Competitor").

117.    Upon information and belief, Defendant Lim, Defendant KDT, Defendant Lee, and Defendant KSN subsequently entered into a certain agreement with Plaintiff's Competitor where Plaintiff's Competitor granted Defendant Lim, Defendant KDT, Defendant Lee, and Defendant KSN the right to publish and sell Plaintiff's Competitors' news articles in the United States.

118.    In or about mid-November, 2007, Defendant Lim, Defendant KDT, Defendant Lee, and Defendant KSN started publishing and selling Plaintiff's Competitor's articles, which were inserted in KDT's Newspaper and KSN's Newspaper, both using Plaintiff's Competitor's trademarks.

       *(c)*     *Defendant Lim, Defendant KDT, Defendant Lee, and Defendant KSN's Continued Unauthorized Use of Plaintiff's Trademarks and Plaintiff's Copyrighted Works that Resulted in Confusion to the Public*

119.    Defendant Lim, Defendant KDT, Defendant Lee, and Defendant KSN's continued unauthorized use of Plaintiff's Trademarks and Plaintiff's Copyrighted Works confused and misled the public to believe that Plaintiff and Defendant Lim, Defendant KDT, Defendant Lee, and Defendant KSN are related entities.

120.    In or about November, 2007, a Korean newspaper company ("Company I") contacted Plaintiff and inquired about whether Plaintiff had a certain contract with

Defendant KSN.

121. According to Company I, many citizens and residents in the U.S. believed that Defendant KSN and Plaintiff were related entities due to Defendant KSN's use of Plaintiff's Trademarks and Plaintiff's Copyrighted Works.

122. After Defendant Lim, Defendant KDT, Defendant Lee, and Defendant KSN started publishing and selling Plaintiff's Competitor's articles, another Korean newspaper company ("Company II") contacted Plaintiff and inquired about whether Plaintiff was acquired by Plaintiff's Competitor.

123. According to Company II, many citizens and residents in the U.S. believed that Plaintiff was acquired by Plaintiff's Competitor due to Defendant Lim, Defendant KDT, Defendant Lee, and Defendant KSN's publication of Plaintiff's Competitor's articles in their newspapers.

124. Even after the termination of the License Agreement and the Temporary Trial Publication, Defendant Lim, Defendant KDT, Defendant Lee, and Defendant KSN have improperly used Plaintiff's Trademarks and Plaintiff's Copyrighted Works and have willfully and intentionally disregarded Plaintiff's continued demand that Defendant Lim, Defendant KDT, Defendant Lee, and Defendant KSN cease such infringing activities.

125. Without Plaintiff's knowledge, permission or authorization, Defendant Lim, Defendant KDT, Defendant Lee, and Defendant KSN used Plaintiff's Trademarks in Defendants' domain names, which also were linked to Plaintiff's Competitor's website, with the intent to profit from Plaintiff's Trademarks.

126. At all relevant times, Defendant Lim, Defendant KDT, Defendant Lee, and Defendant KSN have been aware of the goodwill and reputation inherent in

Plaintiff's Trademarks and Plaintiff's Copyrighted Works and have capitalized on such goodwill and reputation.

127. At all relevant times, Defendant Lim, Defendant KDT, Defendant Lee, and Defendant KSN knowingly used the consumer recognition of Plaintiff's Trademarks and Plaintiff's Copyrighted Works that distinguishes Plaintiff's products and services from those of others to misidentify and misassociate Defendant Lim, Defendant KDT, Defendant Lee, and Defendant KSN's products and services with Plaintiff's products and services to the public.

128. Even after the termination of the License Agreement and the Temporary Trial Publication, Defendant Lim, Defendant KDT, Defendant Lee, and Defendant KSN have intentionally and willfully adopted and used marks that are confusingly similar to Plaintiff's Trademarks.

129. Defendant Lim, Defendant KDT, Defendant Lee, and Defendant KSN's unauthorized use of Plaintiff's Marks and Plaintiff's Copyrighted Works was intentional and deliberate and was designed to take unfair advantage of the goodwill and reputation of Plaintiff.

130. Defendant Lim, Defendant KDT, Defendant Lee, and Defendant KSN received substantial profits out of their unauthorized use of Plaintiff's Trademarks and Plaintiff's Copyrighted Works.

131. Defendant Lim, Defendant KDT, Defendant Lee, and Defendant KSN have manufactured, caused to be manufactured, marketed, distributed or sold their products, which infringed Plaintiff's Trademarks and Plaintiff's Copyrighted Works.

132. As a result of Defendant Lim, Defendant KDT, Defendant Lee, and

23

Defendant KSN's use of Plaintiff's Trademarks and Plaintiff's Copyrighted Works on various products, consumers and retailers are likely to confuse and will continue to confuse products offered by Defendant Lim, Defendant KDT, Defendant Lee, and Defendant KSN with products offered by Plaintiff.

133.    Defendant Lim, Defendant KDT, Defendant Lee, and Defendant KSN's infringement of Plaintiff's Trademarks and Plaintiff's Copyrighted Works is willful and deliberate and with full knowledge of Plaintiff's prior rights in Plaintiff's Trademarks and Plaintiff's Copyrighted Works.

### XIII.   Defendant STV's Purchase of Defendant KDT

134.    Upon information and belief, on or about March 18, 2008, Defendant STV purchased all of the property and assets of Defendant KDT.

135.    Upon information and belief, Defendant STV has continued to operate Defendant KDT's business as the successor to Defendant KDT.

136.    Upon information and belief, Defendant STV is the successor in interest to Defendant KDT.

### XIV.   Defendant STV's Continued Unauthorized Use of Plaintiff's Trademarks and Plaintiff's Copyrighted Works that Resulted in Confusion to the Public

137.    As Defendant KDT previously did without Plaintiff's authorization, Defendant STV continued to use a portion or the entire portion of Plaintiff's Trademarks, specifically, "**Dong-A,**" "**Donga,**" "**Dong-A Daily News**," or "**Miju Donga**" with regard to its businesses, including but not limited to **Dong-A Daily News**, Philadelphia, Inc. a/k/a **Dong-A Daily News** d/b/a The **Dong-A Daily News** d/b/a **Dong-A Daily News, Inc.**, **Dong-A** Broadcasting System, **Donga** Media Group a/k/a **Miju Donga** Media

Group, **Donga** Cultural Center, and **Donga** Distribution, all of which are owned, managed, and operated by Defendant STV as the successor in interest to Defendant KDT. (Emphasis added).

138. As Defendant KDT previously did without Plaintiff's authorization, Defendant STV continued to use a portion of Plaintiff's Trademarks when Defendant STV continued to use KDT's Website, specifically www.**donga**usa.com. (Emphasis added).

139. Through the unauthorized use of Plaintiff's Trademarks and Plaintiff's Copyrighted Works, Defendant STV confused and misled the public to believe that Plaintiff and Defendant STV are related entities, thereby capitalizing on the goodwill and reputation of Plaintiff.

140. Without Plaintiff's knowledge, permission or authorization, Defendant STV continued to use Plaintiff's Trademarks in Defendant STV' domain name, which also was linked to Plaintiff's Competitor's website, with the intent to profit from Plaintiff's Trademarks.

141. At all relevant times, Defendant STV has been aware of the goodwill and reputation inherent in Plaintiff's Trademarks and Plaintiff's Copyrighted Works and has capitalized on such goodwill and reputation.

142. At all relevant times, Defendant STV knowingly used the consumer recognition of Plaintiff's Trademarks and Plaintiff's Copyrighted Works that distinguishes Plaintiff's products and services from those of others to misidentify and misassociate Defendant STV's products and services with Plaintiff's products and services to the public.

143. Defendant STV's unauthorized use of Plaintiff's Marks and Plaintiff's Copyrighted Works was intentional and deliberate and was designed to take unfair advantage of the goodwill and reputation of Plaintiff.

144. Defendant STV received substantial profits out of its unauthorized use of Plaintiff's Trademarks and Plaintiff's Copyrighted Works.

145. As a result of Defendant STV's use of Plaintiff's Trademarks and Plaintiff's Copyrighted Works on various products, consumers and retailers are likely to confuse and will continue to confuse products offered by Defendant STV with products offered by Plaintiff.

146. Defendant STV's infringement of Plaintiff's Trademarks and Plaintiff's Copyrighted Works is willful and deliberate and with full knowledge of Plaintiff's prior rights in Plaintiff's Trademarks and Plaintiff's Copyrighted Works.

## COUNT I: VIOLATION OF §43(a) OF THE LANHAM ACT, 15 U.S.C. §1125(a), AS TO ALL DEFENDANTS

147. Plaintiff repeats and realleges the allegations in the preceding paragraphs as though set forth at length herein.

148. Plaintiff's Trademarks are famous and distinctive throughout the world, including South Korea and the United States, due to Plaintiff's history spanning over 80 years.

149. Over the 80 years and as a result of Plaintiff's substantial advertising and promotional efforts in South Korea, the United States, and other foreign countries, Plaintiff's Trademarks are widely recognized by consumers as being associated with Plaintiff's Media and have become synonymous with the goodwill and reputation of

Plaintiff to provide valuable and accurate news and information to the public.

150. Plaintiff's Trademarks have become uniquely associated with and identifies Plaintiff as the source for Plaintiff's products, including but not limited to print news, newspapers, books, journals, magazines, Internet web sites, downloadable digital files and documents, photo journals, educational and cultural programs, and video programming.

151. The marks of Defendant Lim, Defendant KDT, Defendant Lee, Defendant KSN, and Defendant STV (collectively, "Defendants") are virtually and substantially identical to Plaintiff's Trademarks in style, coloration, appearance, and impression.

152. The use by Defendants of their marks constitutes deliberate and willful copying of Plaintiff's Trademarks.

153. By Defendants' intentional copy or use of Plaintiff's Trademarks after Termination of the License Agreement and the Temporary Trial Publication, Defendant acknowledged that Plaintiff's Trademarks are distinctive in the United States.

154. Defendants' intention in adopting and using its marks was to deceive, mislead and confuse consumers to enable Defendants to take unfair advantage of the goodwill and reputation of Plaintiff.

155. By reason of Defendants' conduct, Plaintiff suffered and will continue to suffer damage to its business, reputation and goodwill.

156. By reason of Defendants' conduct, Defendants have caused and, unless enjoined by the Court, will continue to cause immediate and irreparable harm to Plaintiff for which there is no adequate remedy at law, and for which Plaintiff is entitled to injunctive relief.

## COUNT II: VIOLATION OF §43(c) OF THE LANHAM ACT, 15 U.S.C. §1125(c), AS TO ALL DEFENDANTS

157.    Plaintiff repeats and realleges the allegations in the preceding paragraphs as though set forth at length herein.

158.    Defendant's actions in using Plaintiff's Trademarks caused confusion and mistake and deceived consumers as to the affiliation, connection or association of Defendants with Plaintiff.

159.    Defendant's actions in using Plaintiff's Trademarks caused confusion and mistake and deceived consumers as to the origin, sponsorship or approval of Defendants' products, services or commercial activities by Plaintiff.

160.    Defendants' actions caused dilution by blurring or by tarnishment of Plaintiff's Trademarks.

161.    By reason of Defendants' conduct, Plaintiff suffered and will continue to suffer damage to its business, reputation and goodwill.

162.    By reason of Defendants' conduct, Defendants have caused and, unless enjoined by the Court, will continue to cause immediate and irreparable harm to Plaintiff for which there is no adequate remedy at law, and for which Plaintiff is entitled to injunctive relief.

## COUNT III: VIOLATION OF §44(b) OF THE LANHAM ACT, 15 U.S.C. §1126(b), AND THE PARIS CONVENTION FOR THE PROTECTION OF INDUSTRIAL PROPERTY AS TO ALL DEFENDANTS

163.    Plaintiff repeats and realleges the allegations in the preceding paragraphs as though set forth at length herein.

164.    The United States and South Korea are signatories to the Paris Convention

for the Protection of Industrial Property ("the Paris Convention").

165.    Plaintiff's Trademarks are famous and distinctive throughout the world, including South Korea and the United States.

166.    Defendants' marks are virtually and substantially identical to Plaintiff's Trademarks in style, coloration, appearance and impression.

167.    Usage of Defendants' marks constitutes deliberate and willful copying of Plaintiff's Trademarks.

168.    Defendants' intention in adopting and using its marks was to deceive, mislead and confuse consumers to enable Defendants to take unfair advantage of the goodwill and reputation of Plaintiff.

169.    By reason of Defendants' conduct, Plaintiff suffered and will continue to suffer damage to its business, reputation and goodwill.

170.    By reason of Defendants' conduct, Defendants have caused and, unless enjoined by the Court, will continue to cause immediate and irreparable harm to Plaintiff for which there is no adequate remedy at law, and for which Plaintiff is entitled to injunctive relief.

### COUNT IV: VIOLATION OF §43(d) OF THE LANHAM ACT, 15 U.S.C. §1125(d), AS TO ALL DEFENDANTS

171.    Plaintiff repeats and realleges the allegations in the preceding paragraphs as though set forth at length herein.

172.    Plaintiff is the owner of a certain domain name, **www.donga.com**.

173.    Defendants    registered    their    domain    names,    specifically, www.**donga**usa.com and www.atlanta**donga**.com. (Emphasis added).

174.    Defendants' domain names are identical or confusingly similar to

Plaintiff's Trademarks and Plaintiff's registered domain name, www.donga.com.

175. Defendants intended to profit from Plaintiff's Trademarks by using Plaintiff's Trademarks or Plaintiff's Domain Name as Defendants' domain names.

176. Defendants used Defendants' domain names for commercial purposes.

177. Defendants acted in bad faith in registering and using Defendants' domain names since Defendants intentionally and willfully used Plaintiff's Trademarks and Plaintiff's Copyrighted Works in Defendants' websites.

178. Plaintiff never authorized Defendants to use Plaintiff's Trademarks or Plaintiff's Domain Name as Defendants' domain names.

179. By reason of Defendants' conduct, Plaintiff suffered and will continue to suffer damage to its business, reputation and goodwill.

180. By reason of Defendants' conduct, Defendants have caused and, unless enjoined by the Court, will continue to cause immediate and irreparable harm to Plaintiff for which there is no adequate remedy at law, and for which Plaintiff is entitled to injunctive relief.

## COUNT V: VIOLATION OF THE COPYRIGHT ACT OF 1976, 17 U.S.C. §§101 et. seq., AND THE BERNE CONVENTION FOR THE PROTECTION OF LITERARY AND ARTISTIC WORKS AS TO ALL DEFENDANTS

181. Plaintiff repeats and realleges the allegations in the preceding paragraphs as though set forth at length herein.

182. At all times relevant herein, Plaintiff has been and still is the valid owner of Plaintiff's Copyrighted Works.

183. The United States and South Korea are signatories to the Berne Convention for the Protection of Literary and Artistic Works.

184.    After the termination of the License Agreement and the Temporary Trial Publication, Plaintiff never authorized Defendants to copy or duplicate any of Plaintiff's Copyrighted Works or to offer for sale or sell any copies of Plaintiff's Copyrighted Works.

185.    Defendants' acts, as alleged herein, are infringements of Plaintiff's copyrights.

186.    Defendants have committed all of the aforesaid acts of infringement deliberately and willfully.

187.    Defendants have continued to infringe Plaintiff's copyrights, and unless permanently enjoined by order of this Court, will continue to infringe Plaintiff's copyrights, causing Plaintiff irreparable harm.

188.    Plaintiff has sustained, and will continue to sustain, substantial injuries, loss and damage to its exclusive rights under the copyright laws concerning Plaintiff's Copyrighted Works, and Plaintiff has sustained and will continue to sustain damage from the loss of value of the exclusive rights thereunder by reason of Defendants' conduct.

## COUNT VI: DEFENDANTS' VIOLATION OF COMMON LAW UNFAIR COMPETITION

189.    Plaintiff repeats and realleges the allegations in the preceding paragraphs as though set forth at length herein.

190.    With full knowledge of Plaintiff's Trademarks, Defendants have been manufacturing, causing to be manufactured, selling, distributing and otherwise selling or offering for sale in interstate commerce, products bearing Plaintiff's Trademarks that directly compete with Plaintiff's products.

191.    As a result of plaintiff's considerable investment of time and money,

Plaintiff's Trademarks have developed secondary and distinctive meaning to consumers.

192.    Plaintiff's Trademarks have come to indicate to consumers products and a meaning of quality originating with Plaintiff.

193.    Defendant's actions in adopting Plaintiff's Trademarks have been willful and have been undertaken with the purpose of deceiving consumers.

194.    As a result of such conduct, Defendants have profited and, unless such conduct is enjoined by this Court, will continue to profit by misappropriating the time and money that Plaintiff has invested in establishing its reputation and goodwill.

195.    As a result of such conduct, Plaintiff has suffered and, unless such acts and practices are enjoined by the Court, will continue to suffer damage to its business, reputation and goodwill.

196.    As a result of Defendants' conduct, Plaintiff has suffered and, unless enjoined by this Court, will continue to suffer injury and damages for which Plaintiff is entitled to relief.

197.    By reason of Defendants' conduct, Defendants have caused and, unless such conduct is enjoined by this Court, will continue to cause immediate and irreparable harm to Plaintiff for which there is no adequate remedy at law.

## COUNT VII:  DEFENDANTS' VIOLATION OF PENNSYLVANIA'S UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW

198.    Plaintiff repeats and realleges the allegations in the preceding paragraphs as though set forth at length herein.

199.    Defendants passed off their products as Plaintiff's products within the Commonwealth of Pennsylvania, which caused confusion and mistake and caused to deceive the public as to the affiliation, connection or association of Defendants with

Plaintiff.

200.    Defendant's actions in using Plaintiff's Trademarks caused confusion and mistake and caused to deceive the public as to the origin, sponsorship or approval of Defendants' products, services or commercial activities by Plaintiff.

201.    As a result of such conduct, Defendants have profited and, unless such conduct is enjoined by this Court, will continue to profit by misappropriating the time and money that Plaintiff has invested in establishing its reputation and goodwill.

202.    As a result of such conduct, Plaintiff has suffered and, unless such acts and practices are enjoined by the Court, will continue to suffer damage to its business, reputation, and goodwill.

203.    As a result of Defendants' conduct, Plaintiff has suffered and, unless enjoined by this Court, will continue to suffer injury and damages for which Plaintiff is entitled to relief.

### COUNT VIII: DEFENDANT LIM AND DEFENDANT KDT'S CONTRIBUTORY INFRINGEMENT OF PLAINTIFF'S TRADEMARKS AND PLAINTIFF'S COPYRIGHTS

204.    Plaintiff repeats and realleges the allegations in the preceding paragraphs as though set forth at length herein.

205.    At all relevant times, Defendant Lim and Defendant KDT sold and provided Plaintiff's Copyrighted Works to Defendant Lee and Defendant KSN without Plaintiff's knowledge, permission, or authorization.

206.    Defendant Lim and Defendant KDT have been aware that Defendant Lee and Defendant KSN published, sold and distributed Plaintiff's Copyrighted Works without Plaintiff's knowledge, permission or authorization.

207.    Defendant Lim and Defendant KDT have been aware that Defendant Lee and Defendant KSN used Plaintiff's Trademarks without Plaintiff's knowledge, permission or authorization.

208.    Defendant Lim and Defendant KDT have knowingly and willfully permitted and continues to permit Defendant Lee and Defendant KSN to improperly used Plaintiff's Copyrighted Works and Plaintiff's Trademarks.

209.    Defendant Lim and Defendant KDT's acts, as alleged herein, are infringements of Plaintiff's Copyrighted Works and Plaintiff's Trademarks.

210.    Defendant Lim and Defendant KDT have continued to permit, encourage and facilitate the infringement of Plaintiff's Copyrighted Works and Plaintiff's Trademarks, and unless permanently enjoined by order of this Court will continue to permit, encourage and facilitate the infringement of Plaintiff's Copyrighted Works and Plaintiff's Trademarks, causing Plaintiff irreparable harm.

211.    Plaintiff has sustained, and will continue to sustain substantial injuries, loss and damage to its rights under the law, and Plaintiff has sustained and will continue to sustain damages from the loss of value of Plaintiff's rights thereunder by reason of Defendant Lim and Defendant KDT's conduct.

## COUNT IX: BREACH OF CONTRACT
## AS TO DEFENDANT LIM

212.    Plaintiff repeats and realleges the allegations in the preceding paragraphs as though set forth at length herein.

213.    Plaintiff entered into a valid, binding and enforceable contract with Defendant Lim.

214.    Pursuant to the License Agreement, Plaintiff granted Defendant Lim to

publish and sell Plaintiff's Copyrighted Works in the Philadelphia, Pennsylvania area in exchange for Defendant Lim's promise to make the required payments to Plaintiff in addition to other agreed terms in the License Agreement.

215.    During the term of the License Agreement, Plaintiff provided Plaintiff's Copyrighted Works to Defendant Lim.

216.    Defendant Lim received Plaintiff's Copyrighted Works from Plaintiff.

217.    However, Defendant Lim has refused to comply with terms and conditions of the License Agreement including his payment obligations under the License Agreement to date.

## COUNT X: BREACH OF CONTRACT
## AS TO DEFENDANT LEE AND DEFENDANT KSN

218.    Plaintiff repeats and realleges the allegations in the preceding paragraphs as though set forth at length herein.

219.    Plaintiff entered into a valid, binding and enforceable contract with Defendant Lee and Defendant KSN.

220.    Pursuant to the Temporary Trial Publication, Plaintiff granted Defendant Lee and Defendant KSN to publish and sell Plaintiff's Copyrighted Works in the Atlanta, Georgia area in exchange for Defendant Lee and Defendant KSN's promise to make agreed payments to Plaintiff in addition to other agreed terms in the Temporary Trial Publication.

221.    During the term of the License Agreement, Plaintiff provided Plaintiff's Copyrighted Works to Defendant Lee and Defendant KSN.

222.    Defendant Lee and Defendant KSN received Plaintiff's Copyrighted Works from Plaintiff.

35

223. However, Defendant Lee and Defendant KSN failed to comply with terms and conditions of the Temporary Trial Publication.

## COUNT XI: UNJUST ENRICHMENT
## AS TO ALL DEFENDANTS

224. Plaintiff repeats and realleges the allegations in the preceding paragraphs as though set forth at length herein.

225. In relying on Defendants' promise to make payments under the License Agreement and the Temporary Trial Publication, respectively, Plaintiff provided Plaintiff's Copyrighted Works to Defendants.

226. Defendants received Plaintiff's Copyrighted Works from Plaintiff.

227. However, Defendants failed to make the required payments to Plaintiff under the License Agreement and the Temporary Trial Publication, respectively.

228. Defendants have profited from Plaintiffs' Trademarks and Copyright without Plaintiff's valid authorization.

229. Defendants' unauthorized use of Plaintiff's Trademarks and Plaintiff's Copyrighted Works provided substantial profits to Defendants.

230. As a result, Defendants received a benefit at the expense of Plaintiff.

## COUNT XII: FRAUD AS TO ALL DEFENDANTS

231. Plaintiff repeats and realleges the allegations in the preceding paragraphs as though set forth at length herein.

232. At all relevant times, Defendants made material misrepresentations to Plaintiff that Defendants would make the required payments to Plaintiff under the License Agreement and the Temporary Trial Publication.

233. At all relevant times, Defendants made material misrepresentations to

Plaintiff that Defendants intended to enter into a new agreement with Plaintiff.

234.    While Defendants continued to assure and represent that Defendants intended to enter into a new agreement with Plaintiff, Defendants were negotiating an agreement with Plaintiff's Competitor without Plaintiff's knowledge.

235.    Defendants had intent to deceive Plaintiff.

236.    Relying on Defendants' such continued misrepresentations, Plaintiff did not attempt to negotiate a possible license agreement with potential U.S. licensees regarding Plaintiff's intended publication and sale of Plaintiff's Copyrighted Works in the United States.

237.    Defendants also made material misrepresentations to the public with the intent to deceive Plaintiff's customers and prospective customers that they used Plaintiff's Trademarks and published Plaintiff's Copyrighted Works under Plaintiff's knowledge, permission or authorization.

238.    Plaintiff's customers and prospective customers relied on Defendants' such misrepresentations by treating Defendants' products as if they were provided to such customers with Plaintiff's knowledge, permission or authorization.

## COUNT XIII: CONVERSION AS TO ALL DEFENDANTS

239.    Plaintiff repeats and realleges the allegations in the preceding paragraphs as though set forth at length herein.

240.    Defendants interfered with Plaintiff's possession of Plaintiff's Copyrighted Works by improperly using and selling Plaintiff's Copyrighted Works after the termination of the License Agreement and the Temporary Trial Publication.

241.    Defendants committed such acts without Plaintiff's consent and without

lawful justification.

## COUNT XIV: CIVIL CONSPIRACY AS TO ALL DEFENDANTS

242.    Plaintiff repeats and realleges the allegations in the preceding paragraphs as though set forth at length herein.

243.    At all relevant times, Defendants agreed to defraud Plaintiff by publishing and selling Plaintiff's Copyrighted Works without Plaintiff's knowledge, permission or authorization.

244.    At all relevant times, Defendant Lim and Defendant KDT acted in concert with Defendant Lee and Defendant KSN in infringing Plaintiff's Trademarks and using Plaintiff's Copyrighted Works without Plaintiff's knowledge, authorization or permission.

245.    At all relevant times, Defendants agreed to make concerted efforts to deceive Plaintiff by continuously making misrepresentations to Plaintiff that they intended to enter into a new agreement with Plaintiff while Defendants, in fact, were negotiating a certain agreement with Plaintiff's Competitor.

246.    At all relevant times, Defendants agreed to damage Plaintiff's reputation by publishing defamatory articles in their newspapers in which Defendants inserted Plaintiff's Trademarks and Plaintiff's Copyrighted Works without Plaintiff's knowledge, permission or authorization.

247.    Relying on Defendants' continued misrepresentations that Defendants intended to enter into a new agreement with Plaintiff, Plaintiff did not attempt to negotiate a possible license agreement with potential U.S. licensees regarding Plaintiff's

intended publication and sale of Plaintiff's Copyrighted Works in the United States.

248. At all relevant times, Defendants' conduct, as alleged herein, was intended to deceptively and unfairly profit from Plaintiff and its goodwill and reputation.

## COUNT XV: GROSS NEGLIGENCE AS TO DEFENDANT LIM

249. Plaintiff repeats and realleges the allegations in the preceding paragraphs as though set forth at length herein.

250. At all relevant times, Defendant Lim had a duty to protect Plaintiff's Trademarks and Plaintiff's Copyrighted Works.

251. Defendant Lim breached such a duty by recklessly or with gross negligence providing and selling Plaintiff's Copyrighted Works without Plaintiff's knowledge, permission, or authorization.

252. Defendant Lim's acts caused Defendant Lee and Defendant KSN's infringement of Plaintiff's Trademarks and Plaintiff's Copyrighted Works.

253. Plaintiff has sustained substantial injuries, loss and damage to its rights concerning Plaintiff's Trademarks and Plaintiff's Copyrighted Works as a result of Defendant Lim's acts, as alleged herein.

## COUNT XVI: NEGLIGENCE AS TO DEFENDANT LIM

254. Plaintiff repeats and realleges the allegations in the preceding paragraphs as though set forth at length herein.

255. At all relevant times, Defendant Lim had a duty to protect Plaintiff's Trademarks and Plaintiff's Copyrighted Works.

256. Defendant Lim breached such a duty by negligently providing and selling Plaintiff's Copyrighted Works without Plaintiff's knowledge, permission, or

authorization.

257. Defendant Lim's acts caused Defendant Lee and Defendant KSN's infringement of Plaintiff's Trademarks and Plaintiff's Copyrighted Works.

258. Plaintiff has sustained substantial injuries, loss and damage to its rights concerning Plaintiff's Trademarks and Plaintiff's Copyrighted Works as a result of Defendant Lim's acts, as alleged herein.

## COUNT XVII: PUNITIVE DAMAGES
### AS TO ALL DEFENDANTS

259. Plaintiff repeats and realleges the allegations in the preceding paragraphs as though set forth at length herein.

260. Defendants defrauded Plaintiff by continuously representing that they intended to enter into a new agreement with Plaintiff while Defendants, in fact, were negotiating an agreement with Plaintiff's Competitor.

261. Defendants willfully and deliberately infringed Plaintiff's Trademark and used Plaintiff's Copyrighted Works without Plaintiff's valid authorization.

262. The tortious conduct of Defendants is gross and morally reprehensible, and of such wanton dishonesty as to imply a criminal indifference to civil obligations.

263. The egregious conduct of Defendants is part of a pattern directed at the public generally.

## COUNT XVII: DECLARATORY JUDGMENT, 28 U.S.C. §§ 2201-2202
### AS TO ALL DEFENDANTS

264. Plaintiff repeats and realleges the allegations in the preceding paragraphs as though set forth at length herein.

265.    By wrongfully and continuing to use their infringing and confusing marks and thus representing to their customers and the public that they are entitled to use Plaintiff's Trademarks, Defendants have acted in conflict with Plaintiff's rights in and to Plaintiff's Trademarks.

266.    By wrongfully and continuing to infringe Plaintiff's Copyrighted Works and thus representing to their customers and the public that they are entitled to use Plaintiff's Copyrighted Works, Defendants have acted in conflict with Plaintiff's rights in and to Plaintiff's Copyrighted Works.

267.    There exists an actual, present and substantial controversy of a justiciable nature concerning Plaintiff's rights in Plaintiff's Trademarks and Plaintiff's Copyrighted Works, Defendants' infringement of Plaintiff's Trademarks and unauthorized use of Plaintiff's Copyrighted Works, Defendants' violation of §§43(a), 43(c), 44(b), 43(d) of the Lanham Act, Defendants' violation of the Copyright Act of 1976, Defendants' violation of common law unfair competition, Defendants' violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law.

268.    Plaintiff is entitled to a declaration that Plaintiff's Trademarks are valid and enforceable, and that Plaintiff has prior, valid rights in Plaintiff's Trademarks and Plaintiff's Copyrighted Works and is the rightful owner of all right, title and interest in and to Plaintiff's Trademarks and Plaintiff's Copyrighted Works. Plaintiff also is entitled to a declaration that Defendants' use of Plaintiff's Trademarks or its variants constitute violation of §§43(a), 43(c), 44(b), 43(d) of the Lanham Act, Copyright Act of 1976, common law unfair competition and Pennsylvania's Unfair Trade Practices and Consumer Protection Law.

**WHEREFORE**, Plaintiff prays:

That judgment may be entered in favor of Plaintiff against Defendants, jointly and severally, for Plaintiff's damages together with interest, costs, attorney fees and the disbursements of this action;

That judgment may be entered in favor of Plaintiff against Defendants, jointly and severally, for any applicable statutory damages.

That Defendants permanently enjoined from directly or indirectly use Plaintiff's Trademarks and Plaintiff's Copyright.

That judgment may also be entered against Defendants for their gross, egregious and morally reprehensible conduct, and of such wanton dishonesty as to imply a criminal indifference to civil obligations;

That this Court will grant to Plaintiff such other and further relief as may be just and proper.

**THE PARK LAW GROUP, LLC**
Attorneys for Plaintiff The Dong-A Ilbo

By: _____
Chull S. Park, Esq. (No. 202681)
Hyun Suk Choi, Esq. (No. 203535)

Dated: October 21, 2008

## **VERIFICATION**

I am authorized to make this Verification on behalf of Plaintiff The Dong-A Ilbo, the facts set forth in this pleading are true and correct to the best of my knowledge, except as to matters therein stated upon information and belief, and as to these matters, I believe them to be true; the sources of my information and the grounds of my belief are documents in the possession of Plaintiff and reports made to me by officers, employees, representatives and agents of Plaintiff.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

Seung-Hwan Kim
Team Manager
The Dong-A Ilbo

13513.doc

# EXHIBIT B

FOCUS - 3 of 9 DOCUMENTS

Copyright  2009 Dun & Bradstreet, Inc.
Dun's Market Identifiers

September 17, 2008

Dong A.daily News

1330 Willow Ave Cheltenham,
PA 19012
United States

**BUSINESS ADDRESS:** 1330 Willow Ave, Cheltenham, PA 19012, United States
**MSA:** Philadelphia, Pa-NJ - 6160
**COUNTY:** Montgomery
**CONGRESSIONAL DISTRICT:** 2d Congressional District   - block face level

\* \* \* \* \* \* \* \* \* **COMMUNICATIONS** \* \* \* \* \* \* \* \* \*
**TELEPHONE:** 215-935-5000

\* \* \* \* \* \* \* \* \* **COMPANY IDENTIFIERS** \* \* \* \* \* \* \* \* \*
**DUNS NUMBER:** 01-083-5952

\* \* \* \* \* \* \* \* \* **COMPANY INFORMATION** \* \* \* \* \* \* \* \* \*
**FOUNDED:** 1983
**LEGAL STATUS:** Corporation
**ORGANIZATION TYPE:** Single Location, Small Business, Minority Owned, Established Manufacturer
**EMPLOYEES:**
**Employee Total:** 45
**Employees At This Location:** 45 - Actual
**Employee Total One Year Ago:** 45
**Employee Total Three Years Ago:** 45

**PROPERTY:** 10,000 square feet - OWNS

\* \* \* \* \* \* \* \* \* **EXECUTIVES** \* \* \* \* \* \* \* \* \*

President:
                              Bo H Lim, President

Manager:
                              Soon Lee, General Manager

Controller:
                              Eun Kang, Controller

Manager:
                              Teddy Chung, Computer Manager

I

\* \* \* \* \* \* \* \* \* \* **DESCRIPTION** \* \* \* \* \* \* \* \* \* \*
**INDUSTRY TYPE:** Manufacturing; Newspapers-Publishing/Printing

\* \* \* \* \* \* \* \* \* \* **MARKET AND INDUSTRY** \* \* \* \* \* \* \* \* \* \*
**NAICS CODES:**
511110 - Newspaper Publishers
**SIC CODES:**
2711 - Newspapers
27110100 - Newspapers: publishing and printing
**MARKETS:**
**SALES TERRITORY:** Local
**NUMBER OF ACCOUNTS:** 1,000

\* \* \* \* \* \* \* \* \* \* **INCOME STATEMENT** \* \* \* \* \* \* \* \* \* \*
**Sales Revision Date:** May 2, 2008
**Annual Sales:** $1,500,000 - Actual
**Annual Sales One Year Ago:** $1,500,000
**Annual Sales Three Years Ago:** $1,500,000

**LOAD-DATE:** March 6, 2009

FOCUS - 1 of 9 DOCUMENTS

Copyright 2009 Experian Information Solutions, Inc.
All Rights Reserved
Experian Business Reports

March 9, 2009

**FILE ESTABLISHED:** May 1, 1999

KOREAN DAILY TRIBUNE INC

1330 WILLOW AVE
ELKINS PARK,   PA 19027-3138
UNITED STATES

**\* \* \* \* \* \* \* \* \* \* COMMUNICATIONS \* \* \* \* \* \* \* \* \* \***
**TELEPHONE:** 215-935-5000
**URL:** http://www.smartbusinessreports.com/Main.aspx?link=1009

**\* \* \* \* \* \* \* \* \* \* COMPANY IDENTIFIERS \* \* \* \* \* \* \* \* \* \***
**EXPERIAN FILE NUMBER:** 839317711

**\* \* \* \* \* \* \* \* \* \* COMPANY INFORMATION \* \* \* \* \* \* \* \* \* \***
**LEGAL STATUS:** CORPORATION
**EMPLOYEES:** 26 - 50

**YEARS IN BUSINESS:** 89 – ACTUAL

**\* \* \* \* \* \* \* \* \* \* EXECUTIVES \* \* \* \* \* \* \* \* \* \***
**OFFICERS:**

- DAVID B. LIM, PRESIDENT
- BO H. LIN, PRESIDENT
- BOHYUN LIN, PRESIDENT

**\* \* \* \* \* \* \* \* \* \* MARKET AND INDUSTRY \* \* \* \* \* \* \* \* \* \***
**SIC CODES:**
2711 - NEWSPAPERS

**\* \* \* \* \* \* \* \* \* \* FINANCIALS \* \* \* \* \* \* \* \* \* \***

**SALES:** USD 1,500,000 - ACTUAL

**BUSINESS ANALYSIS:**
**TRADE PAYMENT EXPERIENCES:**
(TRADE LINES WITH AN '*' ARE NEWLY REPORTED)

| BUSINESS CATEGORY | DATE REPTD | LAST SALE | RECENT HIGH CREDIT $ | BALANCE $ | ------ ACCOUNT STATUS ------ | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | -DAYS PAST DUE- | | | |
| | | | | | CUR | 1- 30 | 31- 60 | 61- 90 | 91+ |
| ADVERTISNG | 01/06/09 | — | — | — | — | — | — | — | — |

Payment Terms: NET 30

Experian Business Reports, 3/9/2009, KOREAN DAILY TRIBUNE INC

| BUSINESS CATEGORY | DATE REPTD | LAST SALE | RECENT HIGH CREDIT $ | BALANCE $ | ------ ACCOUNT STATUS ------ | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | CUR | 1-30 | 31-60 | 61-90 | 91+ |
| Comments: CUST  5 YR | | | | | | | | | |
| BLDG MATRL | 01/31/09 | 06/08 | 100 | -- | -- | -- | -- | -- | -- |
| Payment Terms: CREDIT | | | | | | | | | |
| Comments: ACCTCLOSED | | | | | | | | | |
| FINCL SVCS | 02/17/09 | 12/04 | 1,000 | -- | -- | -- | -- | -- | -- |
| Payment Terms: CONTRCT | | | | | | | | | |
| OFFC SUPPL | 12/31/08 | 03/02 | -- | -- | -- | -- | -- | -- | -- |
| Payment Terms: CREDIT | | | | | | | | | |
| Comments: ACCTCLOSED | | | | | | | | | |

**FOOTNOTES:** + IN FIRST COLUMN INDICATES COMPANY IS PAYING FASTER THAN THE INDUSTRY NORM;
- IN FIRST COLUMN INDICATES COMPANY IS PAYING SLOWER THAN THE INDUSTRY NORM;
= IN FIRST COLUMN INDICATES COMPANY PAYS THE SAME AS THE INDUSTRY NORM;
<,> SIGNS INDICATE TRUE HIGH CREDIT OR BALANCE IS < OR > AMOUNT SHOWN

**ADDITIONAL PAYMENT EXPERIENCES:**
(TRADE LINES WITH AN '*' ARE NEWLY REPORTED)

| BUSINESS CATEGORY | DATE REPTD | LAST SALE | RECENT HIGH CREDIT $ | BALANCE $ | ------ ACCOUNT STATUS ------ | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | CUR | 1-30 | 31-60 | 61-90 | 91+ |
| BUS SERVCS | 05/02/08 | -- | 100 | -- | -- | -- | -- | -- | -- |
| Payment Terms: NET 30 | | | | | | | | | |
| CRED CARD | 06/01/07 | -- | 1,500 | 1,500 | 100% | -- | -- | -- | -- |
| Payment Terms: REVOLVE | | | | | | | | | |
| CRED CARD | 01/31/09 | 01/09 | 7,400 | 6,000 | 100% | -- | -- | -- | -- |
| Payment Terms: CREDIT | | | | | | | | | |
| CRED CARD | 03/03/09 | 06/07 | -- | -- | -- | -- | -- | -- | -- |
| Payment Terms: REVOLVE | | | | | | | | | |
| CRED CARD | 02/25/09 | 02/09 | 5,400 | 4,600 | 100% | -- | -- | -- | -- |
| Payment Terms: CREDIT | | | | | | | | | |
| Comments: SATSFTRY | | | | | | | | | |
| LEASING | 10/09/08 | -- | 21,700 | 19,500 | 97% | -- | 3% | -- | -- |
| Payment Terms: NET 30 | | | | | | | | | |
| Comments: CUST  4 YR | | | | | | | | | |
| LEASING | 12/19/08 | -- | 1,000 | -- | -- | -- | -- | -- | -- |
| Payment Terms: CONTRCT | | | | | | | | | |
| Comments: CUST  2 YR | | | | | | | | | |
| OFFC SUPPL | 08/26/06 | 06/06 | 400 | 100 | -- | -- | 100% | -- | -- |
| Payment Terms: NET | | | | | | | | | |
| Comments: CUST  1 YR | | | | | | | | | |
| PETROLEUM | 03/10/07 | 03/07 | 2,800 | 1,600 | 100% | -- | -- | -- | -- |
| Payment Terms: VARIED | | | | | | | | | |
| Comments: CUST 10 YR | | | | | | | | | |

**TRADE PAYMENT TOTALS:**

| | | | RECENT HIGH CREDIT | BALANCE | ------ ACCOUNT STATUS ------ | | |
|---|---|---|---|---|---|---|---|
| | | | | | 1- | 31- | 61- |

Experian Business Reports, 3/9/2009, KOREAN DAILY TRIBUNE INC

| | $ | $ | CUR | 30 | 60 | 90 | 91+ |
|---|---|---|---|---|---|---|---|
| CONTINUOUSLY REPORTED: 4 | 1,100 | | -- | -- | -- | -- | -- | -- |
| DBT: N/A | | | | | | | |
| NEWLY REPORTED: -- | -- | | -- | -- | -- | -- | -- | -- |
| DBT: N/A | | | | | | | |
| TRADE LINE TOTALS: 4 | 1,100 | | -- | -- | -- | -- | -- | -- |
| DBT: N/A | | | | | | | |
| HIGHEST CREDIT MEDIAN: USD 400 | | | | | | | |

## UNIFORM COMMERCIAL CODE FILINGS (UCC):

- Date Filed: 6/9/2004
- Type: UCC-FILED
- Document Number: 20040594906
- Filing Location: SEC OF STATE PENNSYL
- Original Filing Location: PA
- Original Document Number: 2004059490

- Date Filed: 1/1/2001
- Type: UCC-ASSIGN
- Document Number: 2008012310148
- Filing Location: SEC OF STATE PENNSYL
- Original Filing Location: PA
- Original Document Number: 2006060103

- Date Filed: 1/1/2001
- Type: UCC-CONT
- Document Number: 20040672476
- Filing Location: SEC OF STATE PENNSYL
- Original Filing Location: PA
- Original Document Number: 30500293

## UCC COLLATERAL COUNTS:

- COMPANY HAS 1 UCC FILINGS WITH 3 COLLATERAL ITEM(S)

**LOAD-DATE:** May 14, 2009

3 of 3 DOCUMENTS

Copyright 2009 Gale Group, Inc.
All Rights Reserved

Directory of Publications and Broadcast Media
Directory of Publications

2009

**Korean Daily Tribune Inc.**

1330 Willow Ave., Ste. 101
Elkins Park,   PA 19027
USA

\* \* \* \* \* \* \* \* \* \* **COMMUNICATIONS** \* \* \* \* \* \* \* \* \* \*
**TELEPHONE:** (215)935-5000
**FAX:** (215)565-2888

\* \* \* \* \* \* \* \* \* \* **COMPANY INFORMATION** \* \* \* \* \* \* \* \* \* \*
**FOUNDED:** 1980

\* \* \* \* \* \* \* \* \* \* **CORPORATE STRUCTURE** \* \* \* \* \* \* \* \* \* \*
PARENT:Korean Daily Tribune Inc.

\* \* \* \* \* \* \* \* \* \* **DESCRIPTION** \* \* \* \* \* \* \* \* \* \*
Korean language general newspaper.

\* \* \* \* \* \* \* \* \* \* **MARKET AND INDUSTRY** \* \* \* \* \* \* \* \* \* \*
**PRODUCTS:** Newspaper
**MARKETS:**
Daily Newspapers
Foreign Language Publications
Korean
Magazines of General Circulation
Ethnic Publications

**PUBLICATION DETAILS**
FREQUENCY: Mon.-Sat.
**FORMATTING**
PRINCIPAL LANGUAGE: Korean
**CIRCULATION DETAILS**
SUBSCRIPTION RATE: $156 individuals.
COMBINED: 23,000 (Estimate)
**ADVERTISING RATES**
BW: 3920
4C: 4920
PCI: 28
ADS ACCEPTED: YES
ADVERTISING POLICIES: Accepts advertising.

Publications and Broadcast Media, 2009, Korean Daily Tribune Inc.

**CROSS REFERENCE:**

- The Dong-A Daily News

**LOAD-DATE:** February 10, 2009

# EXHIBIT C

10/15/2008

Korean Daily Tribune, Inc.  1330 Willow Ave. Elkins Park, PA 19027

January 3rd, 2007

Dear Mr. Daniel Kim:

I am glad to offer you the position of the CEO and president of Korean Daily Tribune, Inc.  It is my great pleasure to share our visions and plans that can be realized and grown through the Dong-A media group and through our sincere and heartful service to the community, especially to the Korean community in the greater Delaware Valley.

You will be responsible for running the operation of the Dong-A Media group in USA that includes: Dong-A Ilbo, Philadelphia Korean Christian Broadcast, dongausa.com, kyobousa.com, internet radio/TV, Christian Post, Dong-A Cuture Center and Dong-A Merchandises.  You will also be responsible for a nonprofit organization of community center (Namely, Neighborly Center of Philadelphia) when it's established as we spoke.

Your compensation will be initially $4,000 per month with 4 weeks vacation per year.  Your performance will be reviewed annually and your salary will be increased proportionally as the company's revenue grows.  As we agreed, you will be entitled to 50% of net profit.  If the non-profit community center is open or in order to prepare to open it, 50% of net profit will be put into that community center.  The half of the remaining 50%, i.e., 25% of net profit will be awarded to you as bonus annually. If the company is sold while you are employed, or at the time of the termination or resignation of your employment with the company, you will be entitled to the half (50%) of the company's incremented value from the year of 2006, that is set here to $1.2 M. For instance, if the company's is sold at the price of $2.4 M and the company's at-the-time-of-sold or at-the-time-of-termination-or-resignation annual revenue is $2.4 M, your contribution will be counted as $1.2 M growth of revenue. Therefore you will be entitled to 50% of $1.2 M. In case the company cannot pay you in cash, you will be given with company equity corresponding to the percentage. For the above situation, your equity position will be 25%. Once you leave the company, you shall not compete against Korea Daily News Tribune and Dong-A media group.

Again, I am glad to have you for our company, and hope this is a beginning of great relationship between us in God, our Lord. I will provide you a full support to realize our mission − the Kingdom of God in the world through Dong−A media group.

Truthfully,

David A Lim                    1/4/2007
David Bohyeon Lim                Date
Chairman of the Board
The Korean Daily Tribune, Inc/Donga Media Group
1330 Willow Ave.
Elkins Park, PA 19027

Accepted

Danl C.H. Ki              1/4/2007
Daniel Chunghyun Kim         Date